This case involves the sensitive issue of how reasonable attorney's fees are determined.
On January 4, 1983, the Circuit Court of Mobile County entered a judgment in favor of the plaintiff, Mary S. Miley, against the defendants for the sum of $26,744.00, plus court costs. Except for the costs, this represented an attorney's fee to the plaintiff's lawyer as a result of collecting $197,367.88 on a promissory note executed by the defendants. Plaintiff had claimed $39,562.58, *Page 139 
or 20% of the recovery, as attorney's fees. The court allowed 15% of the amount of the recovery. The defendants appealed from the judgment awarding attorney's fees, claiming that the trial court abused its discretion in making this award.
As in most cases, the facts play an important part in establishing the result to be reached. In February 1980, Fairhope East Joint Venture, an entity composed of the defendants in this action, executed a promissory note to the plaintiff, Miley, for the sum of $223,200.00 with interest at 9.5%. The indebtedness was the balance of the purchase price of certain rural property in Baldwin County. The note was secured by a vendor's lien on 79.9 acres, but the agreement provided that certain pieces of property could be released by agreement of the parties. At the time of the litigation, there was 33.3 acres left in the original encumbered acreage, which was landlocked, the released property having been road frontage.
Payments on the note were to be made in six installments, namely, September 25, 1980, 1981, 1982, 1983 and 1984, with a remaining balance due and payable on February 28, 1985. The note contained the usual acceleration clause and, in addition thereto, contained the following provision:
 It is further agreed that the undersigned shall pay all costs of collection, including a reasonable attorney's fee, on failure to pay any installment of principal and interest of the note on the date due hereof.
Defendants paid the first two installments promptly. On September 23, 1982, two days prior to the due date of the 1982 installment, plaintiff's original counsel, by letter, informed defendants that an installment of $39,283.20 was due on September 25, 1982. Plaintiff's then-counsel was informed by defendants' then-counsel that the partners of the joint venture "found it impossible" to raise the funds necessary to make the payment, and that the plaintiff should consider alternatives to default.
Plaintiff, from the beginning, was against alternatives, and desired payment in part or in full. Her first counsel suggested foreclosure as a means of collecting the balance due under the note, but plaintiff, not being satisfied with this attorney, contacted Attorney Stova McFadden, who recommended that plaintiff proceed by a direct suit on the note because this action would have to be taken if there were a deficiency on foreclosure, anyway. Plaintiff, at that time, was anxious to receive funds because she had to make a payment on a note on the same property that she had sold to defendants. On October 7, 1982, McFadden sent a demand letter to the defendants, accelerated the note, and informed defendants that if payment in full was not made by October 18, 1982, suit would be filed. Plaintiff was again informed that the defendants were unable to pay the installment and defendants suggested various alternatives in lieu of the payment of the debt. Plaintiff's attorney suggested, as an alternative, that the entire indebtedness of $196,700, plus an attorney's fee of 15% be paid within one week and in the event this was not done, that a default in this amount plus fee be entered. Contemporaneously with this suggestion made by plaintiff, defendants advised that the debt would be paid within a week. On October 22, 1982, the lawyer for the plaintiff contacted defendants' representative to determine whether the defendants had agreed on the alternative he suggested. He was informed that no agreement had been reached because all of the partners could not be located. On that same day suit was filed.
On November 5, 1982, defendants' new counsel sent plaintiff's counsel a check for $197,367.88, being the full amount plus interest due on the note. In addition thereto, $7,500.00 as an attorney's fee was also tendered by separate check.
Plaintiff's attorney indicated that he only spent 8 or 10 hours' time in the handling of this litigation; however, his arrangement with his clients was that he should look to obtain his fee on a percentage basis from the defendant. In other words, if he did not receive his fee from the defendants, he could not receive any fee from plaintiff. *Page 140 
The court heard testimony from four attorneys, including the plaintiff's attorney. Three attorneys testified that it was customary in the Mobile area to take collection of promissory notes on a contingent percentage fee arrangement rather than an hourly basis. They further testified that 20% of $197,367.00 would produce a reasonable attorney's fee for plaintiff's services in this case. One attorney, the defendant's witness, testified that based on hours spent and the result achieved, a reasonable fee would be $2,000.00. However, he also testified that he had handled promissory note collections on a percentage basis and had been awarded fees up to 25% and "maybe one-third."
Over 71 years ago, Justice Somerville set forth yardsticks to be used by our courts in determining reasonable attorney's fees. He said:
 The general principle is everywhere established that an attorney is in such a case entitled to reasonable compensation for his services, appropriate to his employment, rendered by him to his client. — Humes v. Decatur, etc., Co., 98 Ala. 461, 470, 13 So. 368. In the estimation of their value many elements may be material for consideration, among which are the nature and value of the subject-matter of the employment; the learning, skill, and labor requisite to its proper discharge; the time consumed; the professional experience and reputation of the attorney; the weight of his responsibility; and the measure of success achieved.
Faulk Co. v. Hobbie Grocery Co., 178 Ala. 254, 59 So. 450
(1912).
Forty years later, Justice Simpson added an additional criterion to the six criteria above mentioned. King v. Keith,257 Ala. 463, 60 So.2d 47 (1952). The seventh criterion was that in determining a reasonable attorney's fee, the trial judge should take into consideration the reasonable expenses incurred by the attorney. Although Justice Somerville mentioned in the Faulk case that the customary charges of lawyers in a particular community should also be taken into consideration in determining a reasonable attorney's fee, and some cases have stated that the amount of an attorney's fee could turn on whether the fee was certain or contingent,[1] nevertheless, the codification of the criteria, for the most part, has remained as set forth in the Faulk case. Frazer v. First National Bankof Mobile, 235 Ala. 252, 178 So. 441 (1938); Ingalls v. Hare,266 Ala. 221, 96 So.2d 266 (1957).
Our civilization has progressed dramatically in the past 71 years, as well as our jurisprudence. Although we do not decide that the trial court abused its discretion in deciding the attorney's fees in this case, we are also cognizant that the trial court may not have been aware of certain guideposts, not clearly enunciated in our previous decisions, that should have been taken into consideration in determining a reasonable attorney's fee. Therefore, we vacate the judgment herein, and remand this case to the trial court for reconsideration of a reasonable attorney's fee in the light of our discussion in this opinion of current guideposts to be used in determining counsel fees.
On January 1, 1970, Canon 12 of the American Bar Association relating to fees was superseded by Disciplinary Rule 2-106, which states in § (B):
 (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
 (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 (2) The likelihood, if apparent to the client, that the acceptance of the particular *Page 141 
employment will preclude other employment by the lawyer.
 (3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
 (5) The time limitations imposed by the client or by the circumstances.
 (6) The nature and length of the professional relationship with the client.
 (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
Model Code of Professional Responsibility, DR 2-106 (B) (1982).[2]
Thus, according to the American Bar Association, Justice Somerville's original criteria of six, to which one has been added, should be expanded to include five additional criteria. They are as follows:
1. Whether a fee is fixed or contingent.
2. The nature and length of a professional relationship.
3. The fee customarily charged in the locality for similar legal services. (This was included in the Faulk opinion, but not listed in cases which have followed Faulk).
4. The likelihood that a particular employment may preclude other employment.
5. The time limitations imposed by the client or by the circumstances.
After due consideration of these additional measurements, we believe them to be appropriate yardsticks to be used in determining counsel fees and adopt them as a part of our Alabama jurisprudence.
Having now adopted five additional criteria to the seven already a part of our law, what do they mean and how are they to be applied? We will first address those measurements which have particular impact in the case at bar and then we will discuss the other measurements for the benefit of the practicing bar, as well as the members of the public who may be interested. The measurements which have particular force in this case are: the time consumed; the fee customarily charged in the locality for similar legal services; whether the fee is fixed or contingent; and, the time limitations imposed by the client or by the circumstances.
 I. Time Consumed
Although all of the criteria set forth above must be taken into consideration by the trier of the facts in determining a proper counsel fee — and it has been said that all of these factors should be utilized and applied as the facts so indicate — it is generally recognized that the first yardstick that is used by the trial judges is the time consumed. The reason is fairly obvious. Because of the nature of the legal profession, and the demand to make each hour productive, it stands to reason that competent lawyers would not amass huge numbers of hours unless they were absolutely necessary. However, we must beware of slavish adherence to the time criterion to the exclusion of other criteria. To do so would penalize the lawyer who desires to get his work done as rapidly as he can for the benefit of his client and all concerned. Likewise, we all know that some lawyers can accomplish in a few hours what it would take other lawyers several days to accomplish. Here, although the attorney only spent between 8 and 10 hours on the litigation, it was premium, productive time. The time spent resulted in obtaining for his client the amount immediately due, as well as the total amount of the note which ordinarily would not have been due in full until 1985. If Lawyer McFadden had chosen to proceed with foreclosure instead of direct suit on the promissory note, more time would have been consumed and if time were the only factor involved in determining the fee, more fee would have been earned, but the client would have had the embarrassment of not having funds to pay the note that she had to pay on the property. *Page 142 
 II. Fee Customarily Charged in Locality For Similar Legal Services
Justice Somerville said in Faulk:
 It seems also to be settled by high authority that, where services of the same general nature and extent are of such frequent recurrence among the legal profession that a certain fee, or a certain basis for its estimation, has become customary and usual in such cases, evidence thereof is proper to show what is reasonable. — Stanton v. Embry, 93 U.S. 548, 23 L.Ed. 983; Knight v. Russ, 77 Cal. 410, 19 P. 698; Vilas v. Downer, 21 Vt. 419; Nathan v. Brand, 167 Ill. 607, 47 N.E. 771.
It is clear that the customary fee charged in the Mobile area for the collection of notes on a contingent percentage basis is in the neighborhood of 20%. Of course, there are lawyers who would not take a collection case on a contingent basis and in such a situation, the fee collected from the defendant under a clause such as provided in this note would only be the amount agreed to by the debtor. Faulk Co. v. Hobbie Grocery Co.,178 Ala. 254, 59 So. 450 (1912). However, the court judicially knows that the great majority of the collections done in this state are done on a contingent percentage fee basis. The trial court here voluntarily made it known that it routinely gave in the neighborhood of 20% in collection cases where there had been a default. The reason for the contingent percentage rule is clear. Creditors with many claims or large claims need to obtain money properly owing to them without any corresponding additional charges if the attorney is not successful. Attorneys in the business of practicing law are staffed to take on such contingent arrangements because they believe their competence is sufficient to make what may seem to be an impossibility, a partial or complete success. Such an arrangement serves the public, as well as the profession.
 III. Whether The Fee is Fixed or Contingent
Counsel for the defendants make much of the argument that defendants, in signing the note, did not sign to pay a contingent percentage fee, but signed to pay a reasonable attorney's fee. We agree, but under the circumstances, these words may be synonymous. No one could seriously argue that after default, the debtor should have the right to choose the attorney that best suits his or her predilection. It is natural to believe that a creditor, if he or she can, would prefer, in collecting on a promissory note, to obtain a lawyer who would agree to obtain the fee for collection from the debtor, and if he could not obtain it from the debtor, would make no charge to the creditor. Plaintiff was able to find such an attorney, and, therefore, the charges made by such attorney based on such a contingent percentage arrangement, if reasonable in all other aspects, must be reasonable. Otherwise, we would have the hapless circumstance of the defaulting debtor's dictating to the creditor the attorney that the creditor should choose.
Our cases recognize that an attorney on a contingent fee basis is entitled to charge more than an attorney who is guaranteed compensation by periodic billings. The common sense of this is exemplified in the adage "A bird in the hand is worth two in the bush." If someone is willing to take the great risk of giving up the sure quantity for the uncertain, and wins, then the uncertain prize should be worth more than the certain one. Although counsel for the defendant talks about the fact that defendants promised payment in a week and plaintiff's attorney filed suit before the week was up, this was no guarantee that defendants would actually pay within the week. Prior to this time, they had indicated they were having difficulty getting the payment in full and suggested to the plaintiff that she consider alternatives. She was not moved by this because she had her own payment schedule to meet. Plaintiff's attorney seems to have done what was most logical — proceed to litigation in order that his client might get her money as soon as possible. *Page 143 
 IV. The Time Limitations Imposed by the Client or by the Circumstances
Inasmuch as this criterion was not a part of our law at the time of the trial, the court will be in a position to take additional testimony as to whether plaintiff's lawyer was precluded from other business by virtue of the fact that he had to proceed with great haste to obtain for the plaintiff the obligation that was due her. In other situations, this could include litigation brought by clients on the eve of the running of the statute of limitations, or work done for a criminal defendant in stay of execution, or preparation for trial where a former lawyer has been discharged, and other instances.
 V. Nature and Value of Subject Matter of Employment and Weight of Responsibility
Although an attorney must treat all cases with seriousness and discharge his responsibilities to the best of his ability, common sense tells us that some cases are more complex, involve the lives and fortunes of larger numbers of people, and have a greater public value than other cases. In many cases, lawyers are fighting to overturn the precedents and make new ones. In class action cases, a lawyer may represent hundreds of thousands of people. In some cases, the reputation and integrity of his client may be at stake. In other cases, the very life of a client could be involved. In such cases, due consideration must be made in adjusting the attorney's fee.
 VI. Reputation of the Attorney and the Learning Requisite to His Proper Discharge
The reputation of the attorney is important, not because an attorney should be paid on his reputation, but because it is well recognized that there are certain attorneys who have reputations for being experts in certain areas of the law. These attorneys can accomplish in a few hours what it would take certain attorneys a protracted length of time to accomplish, if ever. Adequate compensation should be made for this expertise.
 VII. The Nature and Length of Professional Relationship and Likelihood That a Peculiar Employment May Preclude Other Employment
Under appropriate circumstances, an attorney who is the attorney for a client who has frequent and continuing legal problems may make appropriate adjustment of the amount of the fee charged. What would be a reasonable fee to such a client may not be the same as for a client who sees the lawyer for the first time. Even in this category, as with all categories, all factors must be considered and weighed against each other before a reasonable attorney's fee is arrived at. The converse of this treatment of the longstanding client is the treatment of a client whose case may preclude other substantial employment. For instance, a suit against a police officer may effectively preclude employment by the suing lawyer of any business from police officers. Because of this potential loss of clients, a lawyer in setting a reasonable attorney's fee may take this into consideration.
Having briefly discussed the most current legal principles dealing with reasonable attorney's fees, we would like to add one caveat. We agree with the admonition of the American Bar Association to the effect that "a fee is clearly excessive when after review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." We are of the opinion that $26,744.00 is in excess of a reasonable fee. As the amount of the recovery increases, the attorney's fee should be prudently reduced. Otherwise, we would have the anomalous situation of a routine collection of a promissory note of $2,000,000.00 and an attorney's fee of $400,000.00. The determination of a reasonable attorney's fee should not be done in a wooden, inflexible manner, but should be done so that all factors will be given their proper interplay. Likewise, we are of the opinion that an amount from $2,000.00 to $7,500.00 is inadequate compensation. Somewhere *Page 144 
between the $7,500.00 and $26,744.00 lies a reasonable fee in this case.
Because of the sensitive nature of the problem of attorney's fees, the litigants and the public would be better served if both attorneys in this case, and their clients, attempted to settle these differences without further resort to the courts.
In accordance with the foregoing reasons, the judgment of the trial court is vacated and the cause is remanded for proceedings consistent with this opinion.
JUDGMENT VACATED; CAUSE REMANDED.
MADDOX, FAULKNER, JONES, ALMON and SHORES, JJ., concur.
BEATTY, J., concurs in the result.
TORBERT, C.J., recused.
[1] King v. Keith, 257 Ala. 463, 469, 60 So.2d 47 (1952); 7 Am.Jur.2d Attorneys at Law, § 254 (1980).
[2] See 57 A.L.R.3d 475, Amount of Attorney's Compensation inAbsence of Contract or Statute Fixing Amount; 58 A.L.R.3d 235,Attorney's Fee in Commercial Matters.