ON REMAND FROM THE SUPREME COURT *
ROBERTSON, Presiding Judge.
The prior judgment of this court has been reversed and the cause remanded by the Supreme Court of Alabama. On remand and in compliance with the supreme court’s opinion in Ex parte Tommie Edwards, 591 So.2d 491 (Ala.1990), we remanded this case to the trial court with directions to make findings of record as to why the requested attorney fee was reduced and to report its findings, either with or without an additional hearing, to this court.
*80 The trial court has complied with this remand and has filed with this court a comprehensive and detailed written order containing its findings of record.
The trial court set out in great detail the factual and procedural history of this case. See Edwards v. Alabama Farm Bureau Mutual Casualty Insurance Co., 453 So.2d 746 (Ala.Civ.App.1983); Edwards v. Alabama Farm Bureau Mutual Casualty Insurance Co., 509 So.2d 232 (Ala.Civ.App.1986); and Edwards v. Alabama Farm Bureau Mutual Casualty Insurance Co., 591 So.2d 489 (Ala.Civ.App.1989); Ex parte Tommie L. Edwards, 591 So.2d 491 (Ala.1990).
Further, the trial court discussed the law regarding factors to be considered in determining a reasonable attorney’s fee. See Peebles v. Miley, 439 So.2d 137 (Ala.1983); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974); Norman v. Housing Authority of Montgomery, 836 F.2d 1292 (11th Cir.1988).
Based on the facts of this case and the law concerning the award of an attorney’s fee, the trial court analyzed the case based on the factors enumerated in Johnson. That analysis, in pertinent part, is as follows:
“1. Time and Labor Involved. A quote from Judge Truman Hobbs’s opinion in another case involving an award of attorney’s fees in a TILA case is germane. Pearson v. Colonial Financial Services, Inc., 530 F.Supp. 599 (M.D.Ala.1982).
“ ‘Finally, the Court observes that almost invariably the estimated time expended by an attorney when the fees are sought from an adversary substantially exceed similarly claimed hours from one’s own client. Whether this reflects a solicitude for one’s own client or a cavalier attitude toward an adversary, a discrepancy generally does exist. Experienced counsel called by defendant testified without exception that they could not imagine an experienced attorney expending 337 hours in this case if the lawyer’s client was expected to pay such fees. The Court would agree — at least to the extent that a lawyer who billed a client for such hours would not be likely to get much repeat business from such a client. 530 F.Supp. at 600.’ The affidavits of Robert Huffaker, Tabor Novak, and J.T. Salmon established that no attorney representing a paying client would expend 500 hours or could charge $76,000 in a dispute involving an attempt to avoid a $2,500 debt.
“2. The Novelty and Difficulty of the. Question. The legal questions here were novel.
“3. Skill of Counsel. There is no doubt that Edwards’ counsel were skilled. Indeed, Legal Services is funded by the government to ensure that such services are available. Neither Edwards nor Legal Services had anything to lose by consistently appealing adverse decisions. The type services rendered by Legal Services are frequently provided by them.
“4. Preclusion of Other Employment. There is no evidence that this case precluded Legal Services taking other cases.
“5. Whether the Fee is Fixed or Contingent. The fee was obviously contingent as the government funds Legal Services to represent clients who cannot afford private representation.
“6. Time Limitations Imposed by the Client or the Circumstances. There were none.
“7. The Experience, Reputation, and Ability of the Attorneys. Mr. Varley is an experienced and skilled attorney in credit litigation.
“8. The Nature and Length of the Relationship with the Client. This is not a factor here.
“9. Awards in Similar Cases. A review of awards in a similar case is most revealing. Judge Hobbs in Pearson, supra, noted that Legal Services’ petition for an award of $31,594.50 was many times greater than any granted in a TILA case in the Middle District of Alabama or in any other case in which such a limited amount was in controversy. 530 F Supp. at 602.
“Judge William R. Gordon granted a $500 fee in a TILA case involving $492 in Trustee Loan & Discount Company v. Carswell, 435 So.2d 114 (Ala.Civ.App.1983). The Court of Civil Appeals affirmed that award.
*81 “In Mirabal v. General Motors Acceptance Corp., 576 F.2d 729 (7th Cir.1978), the Seventh Circuit awarded $2000 fees in a case where the judgment was for $2000.
“In Earl v. Beaulieu, 620 F.2d 101 (5th Cir.1980), the Fifth Circuit refused to award attorney’s fees in excess of the $220 judgment.
“The TILA cases relied on by Legal Services which discuss the specific amount of fees awarded are also instructive. For instance, in McGoran [McGowan] v. King, Inc., 661 F.2d 48 (5th Cir.1981), the trial court awarded plaintiff $6000. The suit involved, as here, two separate trials and two appeals. The trial court awarded only $3,201.60 in attorney’s fees or approximately one-half of the amount recovered. The Fifth Circuit directed the trial court to increase the award to $9,875.50 or $3,875.50 more than the amount awarded. Id. at 50, 53.
“In Smith v. Chapman, 436 F.Supp. 58 (W.D.Tex.1977), plaintiff was awarded $995 for violations of TILA and certain Texas statutes. An attorney’s fee of $3500 or $2500 more than the judgment, was awarded.
“An Illinois appellate court in Merchandise National Bank of Chicago v. Scanlon, 86 Ill.App.3rd 719 [41 Ill.Dec. 826], 408 N.E.2d 248 (1980), affirmed a fee award of $3,625 in a TILA case.
“In Starkes v. Orleans Motors, Inc., 372 F.Supp. 928 (E.D.La.1974), the District Court awarded $2000 in fees after the plaintiff prevailed in a TILA action.
“Thus, the fees in these similar cases, including one which included two appeals, ranged from $220 to $9,875.50. Even the largest fee only exceeded the benefit to the plaintiff by $3,875.50. Here, Legal Services seeks an award of fees some $70,000 in excess of any benefit received by Mr. Edwards.
“10. The Undesirability of the Case. There is absolutely no reason why a TILA case should be undesirable for Legal Services. There is no issue about the lack of availability of counsel as these type cases are handled routinely by Legal Services. Moreover, as Legal Services is funded by the government, there is no financial hardship on it in taking such a case. Legal Services did not undertake a financial risk in representing plaintiff.
“11 & 12. The factors of ‘customary fee’ and the ‘amount involved and results obtained’ will be discussed together. As is set forth in the affidavits of J.T. Salmon, Tabor Novak, and Robert A. Huffaker, no experienced attorney would expend 500 hours prosecuting a case involving the amount in controversy here if the lawyer’s client was expected to pay the fee and that the fees are far out of line. Two of the three opine that the fee should not exceed the economic benefit to the plaintiff (R. 87, 89). Obviously, the benefit to Legal Services’ client did not demand or require the expenditure of $76,000 of fees. Nor could a $76,000 fee in a dispute involving $3500 ever be considered customary or reasonable.
“The matter of a ‘customary fee’ can only be considered in conjunction with the ‘amount involved and results obtained.’ In the almost identical case of Pearson, Legal Services asked for over $31,000 in fees, but was awarded only $6000 by Judge Hobbs, who noted that: ‘[T]he fee is substantially smaller than that claimed and the primary reason is the vast difference between the fee claimed and the amount involved.’ 530 F.Supp. at 602.
“As noted in Peebles, ‘[a] fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.’ 439 So.2d at 140. Such is the case here.
“Legal Services proffered the affidavits of several attorneys in support of the proposition that its fees were reasonable. Several things must be considered to put these affidavits into proper perspective. First, the affiants only read Legal Services’ briefs and the opinions of the Court of Civil Appeals. (R. 46-47). There is no indication that they read the record or Farm Bureau’s briefs, that they were privy to the fact that the most Edwards could gain over and above Farm Bureau's settlement offer was only $1000, or that Farm Bureau’s allowing its Mini-Code license to lapse was *82 based on the advice and opinion of the State Banking Department. Furthermore, it is obvious that Legal Services considers the opinions issued by the Court of Civil Appeals to constitute radical changes in the law.
“In this case, based on the law as it existed prior to the decision of the Court of Civil Appeals, Farm Bureau was entitled to recover its $2,499 debt. Despite this, Farm Bureau made good faith offers to settle by forgiving Edwards’ $2,499 debt. Legal Services never made an offer to settle for as little as Edwards could recover if he won on all counts. It also demanded to be paid some undisclosed amount of attorney’s fees — all of this in a case in which Legal Services believed the chances of prevailing were remote.
“No responsible person would expend $76,000 of fees in a case of this sort. Certainly, no ‘economically rational person engage[d] in [any] cost benefit analysis’ would pay $76,000 to attempt to gain an economic benefit of $3500. Norman, 836 F.2d at 1301. Thus, the hours expended were not reasonable.
“A court is not to look just at hours and rates in arriving at a reasonable fee in this or any other case. The totality of the circumstances were considered by this Court. To award $76,000 of fees in this case would amount to an award of punitive damages against Farm Bureau, whose only transgressions were to rely upon the law as it then existed and to attempt to settle this action on a reasonable basis. The award of $9000 based on the facts discussed above is, in the opinion of this Court, a reasonable award.”
After a review of the trial court’s findings of record, we, again, are of the opinion that the trial court did not abuse its discretion in setting the amount of the attorney’s fee at $9000, and the trial court is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ„ concur.

 Reporter of Decisions’ note: On remand of this case from the Supreme Court (see 591 So.2d 491) the Court of Civil Appeals, on December 5, 1990, issued the following order, without opinion: "Remanded to the trial court with directions to make findings of record as to why the requested attorney fee was reduced and to report its findings, either with or without an additional hearing, to this court within 28 days from this date.”