ROBERTSON, Presiding Judge.
On August 31, 1993, Red Diamond Food Service filed a complaint in the Shelby County Circuit Court against JJL Ventures, Inc., d/b/a Nick’s Original Filet House, seeking to recover $7,565.84 on an open account, plus interest and costs. On December 8, 1993, Red Diamond filed an amended complaint, substituting $5,757.54 as the amount owed and adding Jimmy A. Bailey[1] as a defendant. Red Diamond alleged that Bailey had personally guaranteed payment by JJL Ventures on the open account.
On February 18,1994, Bailey filed a third-party complaint against Lloyd C. Hegen-barth and James C. Walker, alleging that they were the sole stockholders of JJL Ventures. Bailey also alleged that he, Hegen-barth, and Walker had entered into a settlement agreement on November 16, 1992, and that pursuant to that agreement, he had agreed to transfer his stock to JJL Ventures and Hegenbarth and Walker had agreed to indemnify him against any claims or suits against him arising from any liability of JJL Ventures. Bailey asserted that if he was hable to Red Diamond, then Hegenbarth and Walker were hable to him. Hegenbarth and Walker answered the complaint, asserting the affirmative defenses of waiver and negligence, and counterclaimed based on allegations of breach of contract and fraudulent suppression of material facts. On March 28, 1994, Bailey answered Hegenbarth and Walker’s counterclaims, asserting the affirmative defenses of statute of limitations, Statute of Frauds, waiver, and abatement.
Hegenbarth and Walker filed a motion for summary judgment, which the trial court denied. Thereafter, Red Diamond filed a second amended complaint, seeking a reasonable attorney fee. Hegenbarth and Walker filed a motion, seeking a separate trial on Bailey’s third-party claims; the trial court denied that motion.
The court held nonjury ore tenus proceedings on November 28,1994, June 2,1995, and December 21, 1995. It entered a judgment on February 23, 1996, stating, in pertinent part:
“1. [JJL Ventures] ... began operating its restaurant in Pelham, Alabama, in early 1992 and submitted a credit application to [Red Diamond] ... so that it could finance business merchandise on a credit basis. A Red Diamond sales person informed [Bailey], a principal of [JJL Ventures] who was employed as restaurant manager, that a written Individual Personal Guaranty agreement was required, that Red Diamond would accept his signature on the guaranty document initially, but that Red Diamond also required the additional signatures of [Hegenbarth] and [Walker], who were the remaining officers, directors, and stockholders of JJL Ventures, on a guaranty document.
“2. There is a dispute in the testimony about later conversations between [Bailey] and [Walker] and [Hegenbarth]. [Bailey] testified that he first discussed the matter with [Walker] and received [Walker’s] permission, by telephone, to sign the guaranty document, and that' he then did sign the document and that he mailed a copy to [Walker]. [Walker] denied any telephone conversation with [Bailey] concerning the guaranty document, denied he ever received a copy of the document through the mail, and testified that [Bailey] — on two separate occasions — came into his office with the guaranty document when [Hegen-barth] was present: that [Bailey] showed them the document and asked them to sign it as guarantors, but that they refused and *306 returned the document to him. [Walker] further testified that he does not remember that the guaranty document had been signed by [Bailey] when he saw it, but he is not sure of his memory; his best recollection is that it was not signed. [Walker] and [Hegenbarth] both testified that [Walker] emphatically told [Bailey] that, if Red Diamond would not do business with [JJL Ventures] without the guaranty document being signed, then [JJL Ventures] would not do business with Red Diamond, but instead, would buy from some other entity.
“In any event, the original guaranty document signed by [Bailey] was delivered to Red Diamond, a credit relationship was established by and between JJL Ventures and Red Diamond, supplies were thereafter periodically furnished on credit to JJL Ventures, and JJL Ventures paid the credit billing from Red Diamond on a reasonably timely basis until [Bailey] resigned as a manager of JJL Ventures and left JJL Ventures in October/November 1992.
“3. When [Bailey] left [JJL Ventures], he, [Hegenbarth], and [Walker] executed a formal Settlement Agreement which had been negotiated through their attorneys. [Bailey] paid $5,000.00 for his release of his obligations to [Hegenbarth] and [Walker] and to [JJL Ventures], and represented to them, as part of said Settlement Agreement, as follows:
“‘(3) REPRESENTATION AND WARRANTIES OF BAILEY: Bailey represents and warrants ... that he has disclosed to JJL [Ventures] and its shareholders all obligations which he has incurred for or on behalf of JJL [Ventures] and all obligations for which he is to be indemnified hereafter.’;
[H]e simultaneously transferred his stock in JJL Ventures to JJL Ventures, and in exchange therefor, he received from JJL Ventures an indemnity agreement provision, as part of said Settlement Agreement, as follows:
‘“(7) RELEASE FROM GUARANTY: JJL [Ventures] shall use its best efforts to obtain Bailey’s release from liability with respect to any promissory note or other liability of JJL [Ventures] upon which Bailey has personal liability in any capacity. In the event that JJL [Ventures] is unable to obtain the release of Bailey from such liability JJL [Ventures] agrees to defend, indemnify and hold Bailey harmless from any claims or suits against him for any liability of JJL [Ventures], or as guarantor or co-maker of any JJL [Ventures] liability existing as of that date. Notwithstanding the language of this paragraph JJL [Ventures] shall not release, defend, or indemnify Bailey from any claims arising on account of Bailey’s negligence, wantonness, or intentional conduct.’
“The written Settlement Agreement document does not list or identify any specific items of liability from which JJL [Ventures] would endeavor to obtain [Bailey’s] release and from which JJL [Ventures] agreed to defend, indemnify, and hold him harmless, but it is undisputed that [Walker] and [Hegenbarth] knew that [JJL Ventures] continued to purchase supplies on .credit from Red Diamond from the time the restaurant opened until after [Bailey] left the business.
“[Hegenbarth] and [Walker] endorsed their signatures to the said Settlement Agreement document under the following paragraph:
“ ‘These undersigned shareholders hereby personally guarantee the indemnity made by [JJL Ventures] in Paragraph (7) of this Settlement Agreement.’
“4. It is also undisputed that JJL Ventures did not owe any past due account to Red Diamond at the time when [Bailey] left JJL Ventures and that the account for which Red Diamond sues in this litigation in the amount of $7,757.54, plus interest and attorney’s fees, is for items which were furnished by Red Diamond to JJL Ventures after [Bailey] left and that the account did not go into default until February 10,1993.
“5. The Court FINDS the issues in favor of [Red Diamond] and against the defendants on [Red Diamond’s] claim against said defendants, and judgment is entered in favor of [Red Diamond] against *307 defendants [JJL Ventures] and [Bailey] for the sum of $7,757.54, plus a reasonable attorney’s fee in the amount of $1,489.38, plus accrued interest, for a total sum of $13,599.32, with costs of Court accrued taxed to said defendants.
“6. The Court further FINDS the issues in favor of [Bailey] and against [He-genbarth and Walker] on [Bailey’s third-party claim] against [them], and judgment is entered in favor of [Bailey] against [He-genbarth and Walker] for said sum of $13,-599.32, plus a reasonable attorney’s fee in the amount of $3,500.00, for a total sum of $17,099.32, -with costs of Court accrued taxed to [Hegenbarth and Walker].”
On March 19,1996, Hegenbarth and Walker filed a motion for a new trial or, in the alternative, to alter, amend, or vacate the judgment. Following arguments of counsel, the trial court entered an order on April 3, 1996, denying the post-judgment motion.
Hegenbarth and Walker appealed to the Alabama Supreme Court; that Court transferred the appeal to this court pursuant to § 12-2-7, Ala.Code 1975. Hegenbarth and Walker raise two issues: (1) whether the trial court erred in holding that they were required to indemnify Bailey against the judgment entered in Red Diamond’s favor, and (2) whether the trial court erred in awarding Bailey an attorney fee.
Where evidence is presented to a trial court ore tenus, a presumption of correctness exists as to the court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Huprich v. Bitto, 667 So.2d 685 (Ala.1995); Gaston v. Ames, 514 So.2d 877 (Ala.1987).
I. Indemnity Provision
Hegenbarth and Walker argue that the trial court erroneously construed the indemnification provision to require more than indemnification of Bailey against liability existing “as of that date.”
Our supreme court has held that a contract of indemnification
“should be construed, as contracts in general are construed, to give effect to the intention of the parties, which means that it cannot be extended to losses or damages neither expressly within its terms, nor of such character that it may reasonably be inferred that the parties intended to covenant against them. 31 C. J. 429, 430.”
Pyle v. Pizitz, 215 Ala. 398, 401, 110 So. 822, 824 (1926).
It is undisputed that the debt sued upon by Red Diamond was incurred after the parties entered into the settlement agreement. It is also undisputed that neither JJL Ventures, Hegenbarth, nor Walker took any steps to ensure that Bailey was released from any of his obligations after November 12, 1992. However, the record contains conflicting testimony as to whether Hegenbarth and Walker knew of Bailey’s personal guaranty for the payment of the JJL Ventures account with Red Diamond.
Hegenbarth and Walker argue that their testimony and that of Walker’s secretary is evidence that they did not know about Bailey’s personal guaranty for payment of the JJL Ventures account and that Bailey perpetrated a fraud on them by failing to disclose his personal guaranty.
Hegenbarth and Walker’s argument questions the credibility and weight of Bailey’s testimony. “‘[T]he trial court had the opportunity to observe witnesses as they testified, to judge their credibility and demeanor, and to observe what this court cannot perceive from a written record.’ ” Milligan v. Albertville City Bd. of Educ., 661 So.2d 254, 255 (Ala.Civ. App.1995) (quoting Dobbins v. Dobbins, 602 So.2d 900, 901 (Ala.Civ.App. 1992)). As stated previously in this opinion, the record contains conflicting testimony regarding Hegenbarth and Walker’s knowledge of Bailey’s personal guaranty for the payment of the JJL Ventures account with Red Diamond. Additionally, Walker’s secretary testified that she had overheard part of a meeting between Bailey, Hegenbarth, and Walker, and that in that meeting Walker had said to Bailey, in a very loud voice, “I told you hot to sign that agreement.” One could reasonably infer from the secretary’s testi *308 mony that Hegenbarth and Walker knew of the guaranty before they signed the settlement agreement with Bailey.
Accordingly, we conclude that the trial court’s findings of fact are not clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.
• II. Attorney Fee
Hegenbarth and Walker argue that the $3,500 attorney fee awarded to Bailey is partially attributable to his enforcement of the indemnity provision and, thus, is not allowable.
Our supreme court has held that a party entitled to indemnification is entitled to recover a reasonable attorney fee as part of the expenses incurred as a result of a judgment against the indemnitee. Winn-Dixie Montgomery, Inc. v. Stimpson, 574 So.2d 782 (Ala.1991). The question of the reasonableness of an attorney fee is largely within the discretion of the trial court. Peebles v. Miley, 439 So.2d 137 (Ala.1983).
Bailey’s attorney submitted to the trial court, without objection by Hegenbarth and Walker, a $5,075.78 statement of his services rendered to Bailey in this case. The trial court awarded Bailey a $3,500 attorney fee.
Based on a review of the record, we conclude that the trial court did not abuse its discretion by awarding a $3,500 attorney fee to Bailey.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
THIGPEN, YATES, and MONROE, JJ., concur.
CRAWLEY, J., concurs in the result.

. During the pendency of this appeal Bailey died and a suggestion of death was filed with this court. The death of a party to an appeal does not abate that proceeding. Rule 43, Ala.R.App.P.