# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2015

Lyle W. Cayce
Clerk

No. 14-60567

STEVE FREEMAN, as administrator of the estate of Doris Vann, deceased; DEBORAH THORNTON, on behalf of the surviving minor children of Doris Vann; ATTORNEY JAMES VICTOR DOYLE, JR.,

      Plaintiffs - Appellants

v.

CLARKE COUNTY, ET AL

      Defendants

WIGGINS, CHILDS, QUINN & PANTAZIS, L.L.C.,

      Claimant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 4:08-CV-139

Before DAVIS, JONES, and CLEMENT, Circuit Judges.

PER CURIAM:*

In this dispute over the distribution of a contingency fee, James V. Doyle Jr., counsel for plaintiffs-appellants, challenges the district court's allocation

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60567

of the fee.  For the reasons that follow, we hold that the district court did not abuse its discretion in awarding seventy-one percent of the fee to the substituted law firm and twenty-nine percent to Doyle.

## FACTS AND PROCEEDINGS

A. Factual and Procedural Background

The case underlying this appeal involved the death of inmate Doris Vann while she was in custody at the Clarke County Jail in Quitman, Mississippi. Vann's estate and minor children hired the law firm of Thompson, Thompson & Winters to represent them in their Section 1983 claim against Clark County and Mary McClendon (the administrator of the Clark County Jail).  The plaintiffs agreed that their attorneys would receive fifty percent of the "gross recovery obtained" as well as expenses.  The case was transferred to the law firm of Wiggins, Childs, Quinn & Pantazis, LLC ("WCQP") under the same contingency agreement.

Doyle was employed by WCQP as a salaried associate beginning on April 9, 2007.  The Vann case was assigned to him despite having little or no experience with prison death litigation.  Samuel Fisher, a partner at WCQP, also worked on the case.  Fisher was litigating a prison death case when Vann's case was referred to WCQP and thus had some level of expertise in the area.

WCQP filed a complaint in the United States District Court for the Southern District of Mississippi on November 26, 2008.  McLendon filed a motion to stay pending discovery related to her qualified immunity defense. The parties engaged in discovery related to qualified immunity.  McLendon filed a motion for summary judgment on February 19, 2010.  WCQP responded on March 19, 2010.

2

No. 14-60567

Doyle left WCQP on April 23, 2010, to start his own firm and took the Vann case with him. On June 11, 2010, Fisher filed a motion to withdraw from the case and, the same day, Fisher and WCQP filed a "Notice of Attorney's Charging Lien" asserting a "claim to proceeds for services, costs and monies rendered."

On October 4, 2010, Doyle participated in mediation that resulted in a settlement between the parties. The parties settled for $700,000. After the settlement an estate was opened for the decedent in Choctaw County, Alabama, Probate Court. The Probate Court approved the settlement as well as the contingency fee, granting $350,000 to plaintiffs' counsel.

WCQP filed a motion to enforce the attorney's lien on January 18, 2011 in the District Court for the Southern District of Mississippi. The same day, Doyle filed a response and a cross-motion to enforce the settlement agreement. Doyle filed a motion to dismiss WCQP's motion to enforce the attorney's lien on February 2, 2011.

B. District Court Opinion

The district court ruled that 42 U.S.C. § 1988 controls the award of fees in Section 1983 cases such as this one. It affirmed the Probate Court's determination that the fifty percent contingency fee was reasonable. The district court then considered how to apportion the contingency fee between WCQP and Doyle, stating that Section 1988 does not directly deal with the apportionment of contingency fees and, therefore, "this court reasons that in its search for judicial harmony and fairness here, this court is not chained to the § 1988 structure of fee determination, but may freely adopt it or reject its approach in favor of some other appropriate formula."

No. 14-60567

WCQP originally alleged that it was owed $140,700, as calculated by the lodestar method.[1]  WCQP subsequently argued that the lodestar method is problematic here because Doyle failed to keep track of the time he spent working on the case while at WCQP and, thus, any lodestar calculation using WCQP's hours would necessarily underpay the firm.  WCQP now argues that the distribution should be in proportion to the time and services provided.  It calculates that it is entitled to seventy-three percent of the attorney's fees under this measure, a total of $255,500.  Doyle argues that the lodestar method should be used and calculates WCQP's fees at $52,334.50 and costs at $5,910.15, with the remainder of the $350,000 awarded to him.[2]

The district court first applied Mississippi choice of law rules to determine which state's substantive law to apply—given its holding that Section 1988 does not apply to apportioning fees.  Mississippi employs a seven factor "center of gravity" test for choice of law determinations.  *See Boardman v. United Servs. Automobile Ass'n.*, 470 So. 2d 1024, 1031, 1033 (Miss. 1985).  After reviewing these factors, the district court held that Alabama law applied.  The court decided that under Alabama law a lawyer cannot recover on a contingency contract if the legal service is not performed to fruition, but may recover under *quantum meruit* for services rendered.  *See Gamble v. Corley, Moncus & Ward, P.C.*, 723 So. 2d 627 (Ala. 1998)).

---

[1] The lodestar method requires determining the "reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers" and then multiplying the two.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

[2] As explained below, Doyle's position is not actually consistent with a lodestar calculation.

4

No. 14-60567

To determine the proper *quantum meruit* fee, the district court applied Alabama's non-exhaustive eleven factor test for determining reasonable attorney's fees. *See Peebles v. Miley*, 439 So. 2d 137 (Ala. 1983). Based on a careful consideration of these factors, the court divided the fee in proportion to the number of hours WCQP and Doyle worked on the case before settlement. The court concluded that WCQP worked seventy-one percent of the hours and Doyle worked twenty-nine percent of the hours. The court awarded $241,728.79 in fees and $6,913.91 in costs to WCQP and $98,734.30 in fees and $2,623.00 in costs to Doyle. Doyle timely appealed this determination.

## STANDARD OF REVIEW

Questions of jurisdiction are reviewed de novo. *In re Chinese Manufactured Drywall Products Liab. Litig.*, 742 F.3d 576, 584 (5th Cir. 2014). The district court's choice of law determination is reviewed de novo. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012). "We review a district court's award of attorney's fees for an abuse of discretion . . . and we accept the factual findings upon which the district court bases its award . . . unless they are clearly erroneous." *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 716 (5th Cir. 1998) (internal citations omitted). This applies equally when attorney's fees are paid out of a contingency fee. *See Cappel v. Adams*, 434 F.2d 1278, 1279–80 (5th Cir. 1970).

## DISCUSSION

A. Jurisdiction

Doyle argues, unpersuasively, that the district court lacked jurisdiction because "[WCQP] was not a party to the underlying lawsuit" and it withdrew

No. 14-60567

from representing the plaintiffs.  Doyle's argument does not cite the relevant statute, 28 U.S.C. § 1367, which provides:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

This supplemental jurisdiction has a long history in this circuit.  In 1945 we held that, if an attorney does not receive fair compensation following substitution, then "the court may preserve any liens the law may give the attorney on papers in his hands and the proceeds of the suit."  *Doggett v. Deauville Corp.*, 148 F.2d 881, 883 (5th Cir. 1945); *see also Broughten v. Voss*, 634 F.2d 880, 883 (5th Cir. 1981) (stating "[i]f, upon withdrawal, counsel is unable to secure payment for his services, the court may assume jurisdiction over a claim based on a charging lien over the proceeds of the lawsuit."). Moreover, Doyle's argument that the district court lacked jurisdiction over this dispute because fee disputes are the exclusive purview of a jury is waived as a result of not being raised below.[3]  The district court had jurisdiction over WCQP's motion.

B.  The Choice of Alabama Law

---

[3] We have carefully reviewed the record and found no instance of Doyle requesting a jury trial, except as to the underlying prison death case.  Doyle appears to have first mentioned a jury trial following the district court's division of the fee in two parentheticals to case citations in his Rule 60(b) motion.  Further, despite WCQP's argument in its response brief that the issue was not raised, Doyle offers no record citations, in either of his briefs, showing that he ever requested a jury trial.

6

No. 14-60567

We agree with the district court's choice of law determination. Doyle argues that because the Section 1983 claim occurred in Mississippi, any issue concerning attorney's fees under Section 1988 is governed by Mississippi law. This ignores the district court's well-reasoned conclusion that Section 1988 did not apply once the Probate Court determined that the "part of the settlement which addresses attorneys' fees" was reasonable. 42 U.S.C. § 1988(b) states that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee." The Supreme Court has held that:

> § 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the "reasonable attorney's fee" that a defendant must pay pursuant to a court order. *Section 1988 itself does not interfere with the enforceability of a contingent-fee contract.*

*Venegas v. Mitchell*, 495 U.S. 82, 90 (1990) (emphasis added).

The plaintiffs paid fifty percent of their $700,000 award as attorney's fees pursuant to the original contingency agreement. This generous payment, like the payment in *Venegas*, was based upon an agreement between plaintiffs and their attorneys, not a determination by the court about what defendants must pay plaintiffs' counsel. Section 1988 does not control. *See id.*

Thus, we must perform a choice of law analysis, the first step of which is to determine whether the law at issue is procedural or substantive. *See Nationwide Mut. Ins. Co. v. Tillman*, 161 So. 2d 604, 613 (Miss. 1964) (holding that Mississippi will apply the substantive law of the state where the cause of action arose but its own rules of procedure). Mississippi considers the award of attorney's fees procedural and contract questions substantive. *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.,* 743 So. 2d 954, 959–

No. 14-60567

60 (Miss. 1999). We agree with the district court that this is a contract dispute between the parties. Attorney's fees are awarded when "a statute or other authority so provides." *Id.* at 971. This is not a case about whether attorney's fees should be awarded. It is a contractual dispute between two attorneys over how to divide a contingency fee, and no longer involves the interests of the client or the defendants. Thus, the issue is substantive and we turn to Mississippi's choice of law rules regarding substantive questions.

Mississippi applies the "center of gravity" test when determining which state's law to apply to a substantive question. *Sheppard Pratt Physicians, P.A. v. Sakwa,* 725 So. 2d 755, 757 (Miss. 1998) (*quoting* Restatement (Second) of Conflict of Laws § 188 (1971)). The center of gravity test has seven factors.[4] *Boardman,* 470 So. 2nd at 1033. In contract disputes, Section 188 of the Restatement contains five additional factors.[5] *Id.* at 1032. Here, we hold that the Section 188 factors necessitate the application of Alabama law.

Many factors support this decision. The contingency agreement was negotiated and signed in Alabama. WCQP is based in Alabama. Doyle is located in Alabama. The bulk of the legal work performed by WCQP and Doyle occurred in Alabama. The estate was probated in Choctaw County, Alabama. The attorneys initially argued in their filings that Alabama law applied and

---

[4] These factors are: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of a particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) the certainty, predictability and uniformity of result; and (7) the ease of determination in application of the law to be applied.

[5] These factors are: (1) the place of contracting; (2) the place of negotiating the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.

8

thus expected that the court would employ Alabama law. Alabama has an interest in the outcome of a case involving its attorneys. Countervailing factors—the attorney's subsequent discussion of Mississippi law and the fact that the defendants' malfeasance occurred in Mississippi—do not shift the balance in favor of applying Mississippi law. On the whole, applying the various Restatement factors and weighing them appropriately according to the facts, Alabama law applies.

C.  Division of the Contingency Fee

The remainder of Doyle's claims challenge the district court's apportionment of the contingency fee between the parties under Alabama law. Specifically, Doyle contends that the district court erred in "altering the contractual terms of plaintiffs' written employment agreement," not using the lodestar methodology to calculate WCQP's fees, misapplying Alabama's *quantum meruit* law, and not paying WCQP from gross settlement proceeds. We consider these arguments unpersuasive and hold that the district court's division of the contingency fee was not an abuse of discretion.

Alabama allows a discharged attorney to recover reasonable compensation for work performed before discharge, including in cases with contingency fees. *Owens v. Bolt,* 2118 So. 590, 594 (Ala. 1928). Alabama employs a flexible multi-factor test when determining attorney's fees under a *quantum meruit* recovery theory. *Triplett v. Elliott*, 590 So. 2d 908, 910 (Ala. 1991) (citing the multi-factor test in *Peebles*, 439 So. 2d 137).[6] The district

---

[6] The twelve factors are: "(1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional

court started its analysis of the *Peebles* factors by examining the time consumed by each party. *Peebles*, 439 So. 2d at 141 (stating that "the first yardstick . . . is the time consumed.").

WCQP submitted hours for four attorneys, including one partner, Fisher (billed at $550/hour), two associates, including Doyle (billed at $300/hour and $275/hour), and one paralegal (billed at $125/hour). Doyle and Fisher worked 139.96 and 117.75 hours, respectively, and the firm worked a total of 384.58 hours. The bill for these hours was $140,700. However, WCQP argues that the 331.88 hours it worked on the case prior to settlement represent seventy-three percent of the work performed on the case before settlement and thus should result in payment of seventy-three percent of the contingency, $255,500, less expenses.

Doyle argues that WCQP actually performed 239.36 hours of attributable work. He further argues that the billing rates are excessive and that the court should apply the rates of $250/hour for partners, $200/hour for associates, $100/hour for paralegal work, and $50/hour for investigative work, based on the district court's recent use of those rates in *Alexander v. City of Jackson, Miss.*, 2011 WL 1059293, at *14 (S.D. Miss. Mar. 21, 2011) aff'd, 456 F. App'x 397 (5th Cir. 2011). He also argues that the paralegal work should be classified as investigative. Using those rates and multiplying them by the lower total number of hours worked, Doyle concludes that WCQP should

---

relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. Of course, not all of the criteria will be applicable." *Van Schaack v. AmSouth Bank, N.A.*, 530 So. 2d 740, 749 (Ala. 1988)

No. 14-60567

receive \$52,334.50,[7] and that the remainder of the contingency fee should be paid to him.[8]

The district court determined the distribution of the contingency fee not by applying a pure lodestar analysis, but by considering each party's "relative contribution to the outcome" of the underlying suit and the *Peebles* factors. The district court considered that Fisher and WCQP had more experience than Doyle in litigating Section 1983 prison death cases and that their work was "of greater value to bringing this suit to resolution." Following from this, the district court also found that Doyle's work after leaving WCQP primarily involved speaking to "opposing attorneys, the mediator, and his clients" and that this work did not "appreciably alter[ ] the posture and strength of his client's case after the discharge of WCQP."

The court also noted that the use of the lodestar method is problematic when dividing a contingency fee among counsel (as opposed to determining the total amount of fees owed). The issue is that were the court to use a lodestar calculation for one party, the other party would receive the remainder of the contingency: remuneration far in excess of their lodestar calculation. For example, if the court accepted Doyle's original calculations, WCQP would receive \$52,334.50 and then Doyle would receive the remaining \$297,665.50 (minus expenses) for performing, at most, 259.25 hours of work after he left WCQP, an hourly rate of over \$1,100, even though Doyle himself objects to

---

[7] Doyle filed notice of supplemental authority and adjusted this number downward to \$46,344.50. He then filed a response to WCQP's motion to supplement and adjusted the lodestar payment due to WCQP to \$32,954.50.

[8] Doyle does not reconcile the fact that applying the same calculation he applied to WCQP to his work—259.25 hours x \$250/hour (the partner billing rate)—would result in a lodestar amount of \$64,813, approximately one-fourth the amount he requests on appeal.

No. 14-60567

Fisher's $550 hourly rate as excessive. Basically, the lodestar method cannot be applied to the division of a contingency fee because the amount to be distributed is fixed.

Based on this analysis the court calculated the division of the contingency as follows. It paid Doyle and WCQP their claimed expenses, $2,623.00 and $6,913.91, respectively. This left $340,463.09. The court then calculated the total hours worked on the case by everyone from inception to settlement. It found that WCQP worked 306.88 hours on the case while Doyle worked 123 hours on the case after leaving WCQP.[9] Represented as a percentage, WCQP worked seventy-one percent of the hours and Doyle worked twenty-nine percent of them. Thus the court apportioned the contingency in proportion to the hours worked, which resulted in WCQP receiving $241,728.79 and Doyle receiving $98,734.30. Due to rounding, WCQP was paid $787.70 an hour and Doyle was paid $802.72 an hour. This division, determined by applying the relevant factors under Alabama Law, was not an abuse of discretion.

The other issues Doyle raises on appeal do not render this division of the contingency fee an abuse of discretion. The court also notes that Doyle's suggestion that attorney's fees should be paid to WCQP from the gross

---

[9] The district court's 123 hour determination appears generous. Doyle engaged the non-standard practice of billing his time in quarter-hour increments. Many of his quarter-hour time entries were for sending e-mails and making phone calls. His hours could have been reduced for this reason. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948–49 (9th Cir. 2007) (reducing attorney's alleged hours by twenty percent when the records were "replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls, and intra-office conferences" that "likely took a fraction of the time"); *Ingalls Shipbuilding, Inc. v. Dir.*, 46 F.3d 66 (5th Cir. 1995) (table opinion) (text available 1995 WL 29263, at *4) (remanding for a recalculation of the fees without quarter-hour minimum billing).

12

settlement proceeds, rather than the contingency fee, thus reducing the amount his clients receive, is inconsistent with the spirit of the attorney-client relationship and not supported by authority.

## CONCLUSION

We hold that the district court had jurisdiction over this case and did not err in applying Alabama law.  We also hold that the district court carefully explained why it distributed seventy-one percent of the contingency fee to WCQP and twenty-nine percent to Doyle, and that this division was not an abuse of discretion.  The district court judgment is AFFIRMED.