915 So.2d 549 (2004)
PHARMACIA CORPORATION f/k/a Monsanto Company
v.
Candis McGOWAN, as guardian ad litem and administrator ad litem in the matter of Pharmacia Corporation f/k/a Monsanto Company
v.
Sabrina Abernathy et al.
No. 1031016.
Supreme Court of Alabama.
December 10, 2004.
Opinion on Return to Remand June 17, 2005.
*550 Matthew H. Lembke and Scott Burnett Smith of Bradley Arant Rose & White, LLP, Birmingham; and W. Stancil Starnes of Starnes & Atchison, LLP, Birmingham, for appellant.
Candis A. McGowan of John D. Saxon, P.C., Birmingham, for appellee.
SEE, Justice.
Pharmacia Corporation f/k/a Monsanto Company appeals from a judgment entered by the Etowah Circuit Court ordering Pharmacia to pay an attorney fee of $284,000 to Candis McGowan, the guardian ad litem for the minor plaintiffs and the administrator ad litem for the deceased plaintiffs in the underlying action. We remand this case with directions.
The underlying litigation involves three consolidated actions brought by approximately 3,500 plaintiffs against Pharmacia asserting various tort claims. The plaintiffs alleged environmental contamination resulting from the production of polychlorinated biphenyls, also known as PCBs, at a plant operated by Pharmacia in Anniston.
After the parties had reached a settlement agreement, the trial court appointed Candis McGowan to serve as guardian ad litem for the minor plaintiffs. McGowan was also appointed as administrator ad *551 litem for the estates of those plaintiffs who had died during the course of the litigation. Her appointment as administrator ad litem was "for the limited purpose of considering the Settlement Agreement and determining whether to execute (and if a determination to execute is made, then to execute) releases on behalf of the estates." The trial court also ordered:
"[Pharmacia] shall reimburse the administrator ad litem for any costs she incurs in connection with this action and shall pay the administrator ad litem her customary rate for her time spent on this action."
McGowan reviewed the settlement agreement and determined that it was in the best interests of the minors and the estates she represented to enter into the agreement. After a pro ami hearing, in which the trial court heard McGowan's opinion on the settlement agreement as guardian ad litem for the minor plaintiffs, the trial court entered a judgment pursuant to the settlement agreement with Pharmacia McGowan had executed on behalf of the 300 minor plaintiffs she represented. The trial court retained jurisdiction over the matter "for the purpose of enforcing the Settlement Agreement and this Judgment." It appears that McGowan also executed releases and/or settlement agreements on behalf of all of the 268 estates she represented.[1]
McGowan then petitioned the trial court for an award of an attorney fee in the amount of $284,000. McGowan asserted in her petition that she had "fulfilled her obligations as guardian ad litem and administrator ad litem." McGowan did not submit to the trial court any records evidencing the actual time she had spent representing her wards. Instead, McGowan argued that a reasonable attorney fee would be $500 for each of the 568 plaintiffs she represented, or "at least $284,000." McGowan also sought reimbursement of expenses in the amount of $2,777.68.[2] McGowan supported her petition for an attorney fee with the affidavits of two attorneys who purported to serve regularly as guardians ad litem and who stated their opinion that the fee McGowan was requesting was reasonable under the circumstances. Mavanee R. Bear attested that a normal fee for a guardian ad litem or administrator ad litem is "between $400.00 to $1,000.00 per plaintiff, in a simple, uncomplicated domestic relations case"; Donna Knotts Byrd attested that a reasonable fee awarded to a guardian ad litem is "between $500 to $1,000 per ward in a simple Probate matter."
Pharmacia objected on the ground that McGowan did not provide any records indicating the hourly rate at which she regularly billed clients or the time she had actually spent on behalf of the plaintiffs she represented in this case. Pharmacia conceded that an hourly rate of $250 was reasonable for McGowan's services and pointed out that, at this hourly rate, in order to amass $284,000 in fees, McGowan would have had to work on this case for nine hours a day, seven days a week, from her appointment as guardian ad litem on August 22, 2003, to the date she filed her fee petition  December 24, 2003.
McGowan responded to Pharmacia's objection by arguing that the amount she was requesting  $500 per plaintiff  *552 amounted to two hours of time on behalf of each plaintiff at what Pharmacia agreed was the reasonable hourly rate of $250. She asserted that the amount requested would compensate her for all work already performed and for any work she might be required to perform in the future. McGowan argued that it was easily foreseeable that she would spend two or more additional hours on each plaintiff's case in the future, because her obligation to the plaintiffs would continue through the 10-year settlement-payout term under the settlement agreement and because it was possible that additional claims would be filed on behalf of the minor plaintiffs who had suffered neurological damage.[3] Pharmacia replied that, if that was true, then McGowan essentially was requesting an improper nonrefundable retainer, in that she was requesting payment for work to be performed in the future, with no provision for the refund of those fees if the work was not actually performed. Pharmacia proposed that McGowan be paid $250 for each hour she actually spent on the case and that, if it becomes necessary that McGowan expend additional time on this matter in the future, she submit additional fee requests to the trial court for its review and approval.
Over Pharmacia's objection, the trial court entered an order awarding McGowan $286,777.68  the $284,000 in fees and $2,777.68 in expenses that she had requested. The entire text of the order reads as follows:
"The Court having reviewed the file in the above styled case, it is hereby ORDERED that Candis McGowan, Guardian-Ad-Litem and Administrator-Ad-Litem in this case is awarded a fee of Two Hundred Eighty Six Thousand Seven Hundred Seventy Seven and 68/100 ($286,777.68) Dollars. These fees are hereby assessed against the Defendant[]. It is further ORDERED that the Defendant[] [is] given Fourteen (14) days in which to pay said fees."
Pharmacia moved the trial court to alter, amend, or vacate its order awarding $284,000 in fees, arguing that the amount of the award was unreasonable. Pharmacia did not contest the award insofar as it reimbursed McGowan for the expenses she had incurred of $2,777.68. McGowan responded; Pharmacia replied to her response. Pharmacia's postjudgment motion was denied by operation of law, pursuant to Rule 59.1, Ala. R. Civ. P. Pharmacia appeals.
The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and its determination on such an issue will not be disturbed on appeal unless in awarding the fee the trial court exceeded that discretion. State Bd. of Educ. v. Waldrop, 840 So.2d 893, 896 (Ala.2002); City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala.2001); Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992), citing Varner v. Century Fin. Co., 738 F.2d 1143 (11th Cir.1984).
This Court has set forth 12 criteria a court might consider when determining the reasonableness of an attorney fee:
"(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the *553 measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances."
Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988). These criteria are for purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met. Beal Bank v. Schilleci, 896 So.2d 395, 403 (Ala.2004), citing Graddick v. First Farmers & Merchants Nat'l Bank of Troy, 453 So.2d 1305, 1311 (Ala.1984).
We defer to the trial court in an attorney-fee case because we recognize that the trial court, which has presided over the entire litigation, has a superior understanding of the factual questions that must be resolved in an attorney-fee determination. Horn, 810 So.2d at 681-82, citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Nevertheless, a trial court's order regarding an attorney fee must allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee. Horn, 810 So.2d at 682, citing American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir.1999); see also Hensley, 461 U.S. at 437, 103 S.Ct. 1933.
In this case, the trial court's order awarding an attorney fee of $284,000 provides no indication as to whether the trial court considered any of the criteria outlined by this Court in Van Schaack. Indeed, the trial court provided no explanation for its award. It is particularly troublesome that McGowan provided the trial court with no records of the time she spent on behalf of the plaintiffs she represented in this matter. It is generally recognized that the "first yardstick that is used by the trial judges [in assessing the reasonableness of an attorney-fee request] is the time consumed." Peebles v. Miley, 439 So.2d 137, 141 (Ala.1983). Further, we note that, in its order appointing McGowan as administrator ad litem for the estates of the deceased plaintiffs, the trial court stated that Pharmacia "shall pay the administrator ad litem her customary rate for her time spent on this action."[4] Yet the trial court awarded McGowan $134,000 in fees for representing the 268 estates,[5] without being provided any time records and without any explanation for the apparent deviation from the trial court's own prescribed method of calculating McGowan's compensation.
Nevertheless, we will not set aside a trial court's judgment awarding an attorney fee "`unless we are convinced that that court abused the discretion wisely vested in it.'" Beal Bank, 896 So.2d at 404 (quoting King v. Keith, 257 Ala. 463, 470, 60 So.2d 47, 52 (1952)). Without some explanation by the trial court as to what it considered in awarding the attorney fee to McGowan, we cannot ascertain whether *554 the trial court exceeded its discretion in awarding that fee. Therefore, we remand this cause to the trial court for the entry of an order explaining the decision it made and articulating its reasons for that decision. Due return shall be made to this Court within 42 days of the date of this opinion.
REMANDED WITH DIRECTIONS.
NABERS, C.J., and BROWN, HARWOOD, and STUART, JJ., concur.

On Return to Remand
SEE, Justice.
On December 10, 2004, this Court remanded this cause to the trial court for the entry of an order articulating its reasons for awarding $284,000 in attorney fees to Candis McGowan, the guardian ad litem for the minor plaintiffs and the administrator ad litem for deceased plaintiffs in the underlying action. Pharmacia Corp. v. McGowan, 915 So.2d 549 (Ala. 2004). We recognized that the determination of whether an attorney-fee award is reasonable is within the sound discretion of the trial court and will not be disturbed on appeal absent a showing that the trial court exceeded that discretion. 915 So.2d at 552 (citing State Bd. of Educ. v. Waldrop, 840 So.2d 893, 896 (Ala.2002); City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala.2001); and Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992), citing in turn Varner v. Century Fin. Co., 738 F.2d 1143 (11th Cir.1984)). We also stated that this Court defers to the trial court in an attorney-fee case because it recognizes that the trial court, which has presided over the entire litigation, has a superior understanding of the factual questions that must be resolved in an attorney-fee determination. 915 So.2d at 553 (citing Horn, 810 So.2d at 681-82, citing in turn Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). We recognized, however, that a trial court's order awarding an attorney fee must allow for "meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee." 915 So.2d at 553 (citing Horn, 810 So.2d at 682, citing in turn American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir.1999)). Therefore, we remanded the case for the trial court to enter an explanatory order.
On remand, the trial court entered a "memorandum opinion and order" articulating its reasons for the attorney-fee award. The trial court's order complies with our directive, enabling us to review what factors the trial court considered. Having done so, we conclude that the trial court exceeded its discretion in awarding McGowan an attorney fee of $284,000.
This Court has set forth a list of 12 criteria that a court might consider when determining the value of an attorney's services and hence the reasonableness of an attorney fee:
"(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances."
*555 Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988).
In remanding the case to the trial court, we noted that we were particularly troubled by the fact that McGowan had provided the trial court with no records of the time she had expended representing her wards. We noted: "It is generally recognized that the `first yardstick that is used by the trial judges [in assessing the reasonableness of an attorney-fee request] is the time consumed.' Peebles v. Miley, 439 So.2d 137, 141 (Ala.1983)." 915 So.2d at 553. On return to remand, the trial court responded to our concern as follows:
"[T]his Court notes that although attorneys may be paid on an hourly basis, other fee structures are common within ... the Bar. These include awards on a contingency basis and the use of `flat fees' for working specific tasks (for example, drafting a will, handling a criminal or domestic relations matter, etc.). Although time spent in a case has often been the first yardstick used by the trial judge in setting a fee, it is not the only measure of a fee, and indeed need not even be considered by the judge at all. See Peebles [v. Miley], [4]39 So.2d [137] at 141 [(Ala.1983)] (emphasis added)."
We do not agree with the trial court's assessment that Peebles v. Miley, 439 So.2d 137 (Ala.1983), stands for the proposition that a trial court, in determining an attorney-fee award, need not consider "at all" the time spent on the matter. To the contrary, Peebles states that "all of the [12 criteria] must be taken into consideration by the trier of the facts." 439 So.2d at 141. Peebles does state that "we must beware of slavish adherence to the time criterion to the exclusion of other criteria." 439 So.2d at 141. But we cannot agree with McGowan and the trial court that the reasonableness of an attorney-fee award should be  nor are we convinced that it can be  assessed with complete disregard for the time spent on the matter. See, e.g., Clement v. Merchants Nat'l Bank of Mobile, 493 So.2d 1350, 1355 (Ala.1986) (reversing trial court's award of $200,000 to guardians ad litem who expended 373.55 hours, which was about $535 per hour, "[e]ven taking into consideration the large sum of money involved in this suit and the fact that the guardians ad litem were representing a minor").
We proceed, nonetheless, to consider the manner in which the trial court did assess the reasonableness of McGowan's requested attorney fee. On original submission, we were unable to ascertain whether the trial court had based its award on McGowan's suggested calculation of $500 per plaintiff. The trial court's order on return to remand specifically states that McGowan "is hereby awarded a fee of $500 per ward (300 minors and 268 estates) for a cumulative attorney's fee of $284,000." In so concluding, the trial court considered affidavits of two attorneys who purported to serve regularly as guardians ad litem. The attorneys averred in those affidavits that the normal fee for a guardian ad litem or an administrator ad litem is "between $400.00 to $1,000.00 per plaintiff, in a simple, uncomplicated domestic relations case" and that a reasonable fee for serving as a guardian ad litem is "between $500 to $1,000 per ward in a simple Probate matter." We do not doubt that a fee ranging from $400 to $1,000 per ward would be reasonable in an uncomplicated domestic-relations case or in a simple probate matter. However, in Peebles, this Court warned against determining the reasonableness of an attorney fee in a "wooden inflexible manner," stating that the determination instead "should be done so that all factors will be given their proper interplay." 439 So.2d at 143. In that case, the Court submitted that a general concession *556 that, in a collections matter, an attorney fee of 20% of the collected amount is reasonable would result in the "anomalous situation" in which the routine collection of a $2,000,000 promissory note would allow for an attorney fee of $400,000. 439 So.2d at 143. We submit that conceding that an attorney fee of $500 per ward is reasonable in a probate or domestic-relations matter does not necessarily lead to the conclusion that $500 per ward is a reasonable method of calculating a fee for a guardian ad litem with 568 wards in a mass-tort case.[1] Thus, we cannot conclude that $500 per ward is a reasonable basis for calculating McGowan's fee.
Furthermore, as we stated in Peebles, we agree with the admonition of the American Bar Association that "`a fee is clearly excessive when after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.'" 439 So.2d at 143. After a review of the facts,[2] we are convinced that an award of an attorney fee of $284,000 to McGowan is excessive.
We acknowledge the reasons the trial court offers to bolster the award it arrived at by multiplying $500 per ward by the 568 wards; however, we need not address the soundness of those reasons, because we conclude that the trial court's method of calculating the award at the outset  that is, with complete disregard for the time expended by McGowan and in applying what might be a "reasonable fee" in a completely different context  was unreasonable.[3]
*557 We conclude that the trial court exceeded its discretion in awarding McGowan an attorney fee of $284,000. We, therefore, reverse the trial court's judgment and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
NOTES
[1] Presumably, judgment was entered pursuant to those agreements; the entire record is not before this Court.
[2] McGowan sought $2,777.68 for reimbursement of costs, the bulk of which covered air travel to and lodging in New York City, where McGowan apparently reviewed the plaintiffs' files and/or the settlement agreement(s). Pharmacia did not object to the payment of these costs.
[3] There was no indication in McGowan's original petition for an attorney fee that she intended those fees to compensate her for services to be rendered in the future. In addition, it is unclear whether this "10-year payout term" relates to the plaintiffs that are estates or only to the plaintiffs who are minors.
[4] The trial court's order appointing McGowan as guardian ad litem for the minor plaintiffs does not address the manner in which McGowan would be compensated.
[5] This amount is calculated based on the assumption that the trial court awarded McGowan $500 per plaintiff. We are unable to ascertain whether the trial court calculated its award on that basis and, therefore, are unwilling to reverse the trial court's judgment without further explanation from the trial court.
[1] If there had been 1,136 wards, would the proper fee have been $568,000? If there had been 284 wards, would the proper fee have been $142,000? The answer is not clear, because the rationale for calculating the attorney fee by simply multiplying a flat fee by the number of wards is not clear.
[2] We do not have before us the number of hours expended by McGowan, because, apparently, no evidence of the time expended on the matter was presented to the trial court. However, we do note, as does Pharmacia, that, assuming an hourly rate of $250, in order to amass $284,000 in fees, McGowan would have had to work on this case for nine hours a day, seven days a week, from the date of her appointment to the date she filed her petition seeking an attorney fee of $284,000. The record before us indicates that McGowan performed substantially less work than would have been produced by such ardor. Before submitting her fee request, McGowan traveled to New York City to review the case file and settlement agreements, determined that the settlement agreements were in the best interests of her wards, executed releases on behalf of the estates she represented, and attended a pro ami hearing on behalf of the minor plaintiffs.
[3] The trial court points to McGowan's experience and reputation and to the complexity of the underlying litigation. In addition, the trial court asserts that McGowan's duties as guardian ad litem will continue during the 10-year payout term provided for in the settlement agreement between Pharmacia and the minor plaintiffs and that additional work might have to be performed because, pursuant to that settlement agreement, the minor plaintiffs may later seek additional compensation. Further, the trial court notes that McGowan is subject to potential legal liability because, upon reaching the age of majority, the minor plaintiffs might contest the amount or other aspects of the settlement.

Although McGowan's potential future legal liability is a relevant consideration in determining her fee because it adds to the weight of her responsibilities, we agree with Pharmacia that the trial court's consideration of work McGowan might be called upon to perform in the future is problematic. As Pharmacia points out, McGowan could withdraw as guardian ad litem or could even leave the practice of law. Even assuming that McGowan retains her position as guardian ad litem, the extent of any future work is unknown. McGowan asserts that it would be "ridiculous" for her to return to the trial court year after year to request additional fees because, she says, the purpose of awarding a flat fee is to conclude the litigation. Yet the trial court's rationale for paying her for work that she may be called upon to perform in the future is that some aspects of the case cannot be affirmatively concluded because of the 10-year payout term and the right of the minor plaintiffs to seek additional compensation in the future. We do not find McGowan's argument persuasive.