Rel: July 11, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2024-0308
_____

### CBS Holdings, LLC

### v.

### Hexagon US Federal, Inc.

### Appeal from Madison Circuit Court
### (CV-21-900504)

COOK, Justice.

This is an appeal over the award of attorney fees arising out of a

dispute involving a commercial lease. This is the second time these parties have appeared before us regarding this dispute. See CBS Holdings, LLC v. Hexagon US Federal, Inc., [Ms. SC-2024-0077, Oct. 18, 2024] ___ So. 3d ___ (Ala. 2024).

In the earlier appeal, Hexagon US Federal, Inc. ("HexFed"), had leased a portion of a building, which was later sold to CBS Holdings, LLC. A dispute arose between the parties about the length of the lease and whether HexFed had validly renewed the lease for an additional term.

HexFed eventually filed suit against CBS Holdings, alleging that CBS Holdings had breached the lease by threatening to eject HexFed from the building. In response, CBS Holdings alleged various counterclaims against HexFed.

Following a bench trial, the Madison Circuit Court entered a judgment in favor of HexFed on all claims and awarded HexFed costs and attorney fees in an amount to be determined in the future. CBS Holdings appealed, and our Court affirmed the trial court's judgment in favor of HexFed, including its award of costs and attorney fees.

After an evidentiary hearing, the trial court entered an order awarding HexFed $174,987.45 in costs and attorney fees. CBS Holdings

appeals that order, arguing that HexFed failed to adequately support its application for attorney fees because it redacted the description of the legal work performed by its attorneys for nearly every entry on the invoices it submitted. CBS Holdings also argues that the trial court's order awarding those costs and attorney fees to HexFed was not sufficiently detailed and thus cannot "allow for meaningful appellate review" because it does not "articulat[e] the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee." Pharmacia Corp. v. McGowan, 915 So. 2d 549, 553 (Ala. 2004). We agree and thus reverse the trial court's order and remand the matter for proceedings consistent with this opinion.

## Facts and Procedural History

### I. The Underlying Commercial-Lease Dispute

The origins of this commercial-lease dispute date back to 2015, when Intergraph Unimproved Properties, LLC ("Intergraph Unimproved"), entered into a lease agreement for two "bay areas" with HexFed, formerly known as Intergraph Government Solutions Corporation. At the time, HexFed and Intergraph Unimproved were related entities. The 2015 lease was amended once by mutual agreement

3

of the parties in 2016 ("the 2016 lease").

After the lease was amended, the building was sold by Intergraph Unimproved to CBS Holdings in November 2016. HexFed continued to occupy the leased bays and paid rent to CBS Holdings. The parties amended the 2016 lease by mutual agreement in September 2020.

In December 2020, HexFed emailed CBS Holdings a notice of HexFed's intent to renew the 2016 lease. That same day, CBS Holdings responded to HexFed, rejecting the renewal notice. In January 2021, HexFed's new legal counsel Matthew Moore, with Moore Compliance Law, P.C., sent a letter to CBS Holdings explaining that HexFed intended to continue occupying the leased bays according to the renewal provisions in the 2016 lease. In its response, CBS Holdings argued that HexFed's attempted renewal notice "was tantamount to an offer for a new lease on cheaper terms" and offered HexFed a new lease for a greater price.

On April 21, 2021, HexFed filed suit against CBS Holdings, seeking a judgment declaring that HexFed had validly exercised its option to renew the 2016 lease. HexFed also claimed that CBS Holdings had breached the 2016 lease by breaching its covenant of quiet enjoyment and

sought costs and attorney fees pursuant to the 2016 lease.

CBS Holdings answered and filed counterclaims against HexFed, asserting breach-of-contract, ejectment, and unjust-enrichment claims and seeking the imposition of a landlord's lien.

The trial court held a bench trial on December 18, 2023. Following the bench trial, on January 12, 2024, the trial court entered a judgment in favor of HexFed on all claims and concluded that HexFed was entitled to costs and attorney fees in an amount to be determined in the future. As part of its judgment, the trial court ordered HexFed to provide the court with any supplemental evidentiary submissions within three weeks.

On February 5, 2024, CBS Holdings appealed the trial court's judgment in favor of HexFed, including its decision to award HexFed costs and attorney fees.

II. HexFed's Application for Costs and Attorney Fees

Before CBS Holdings filed its appeal, HexFed had already filed its application for costs and attorney fees in the trial court, in which it asked for an award of $174,987.45. In support of its application, HexFed included the affidavit of Rebecca D. Harris, the chief financial officer of

HexFed, who provided a general accounting of HexFed's attorney fees and litigation expenses. HexFed also included the affidavit of Walter A. "Tod" Dodgen, the managing partner of the Huntsville office of Maynard Nexsen, P.C. Dodgen stated he had reviewed the redacted invoices from Loftin Holt LLP and Moore Compliance Law, P.C. -- the two firms that had worked with HexFed during the course of its dispute with CBS Holdings -- and found HexFed's requested attorney fees reasonable in light of the complexity of the case.

In response, CBS Holdings filed a motion to stay the determination of attorney fees HexFed was entitled to, pending the resolution of CBS Holdings' first appeal before this Court. CBS Holdings argued that if it was successful in its appeal, HexFed's application for attorney fees would be mooted. Additionally, CBS Holdings argued that HexFed had not sufficiently supported its application for attorney fees. The trial court denied CBS Holdings' motion to stay and set the application for a hearing on March 21, 2024.

On February 28, 2024, HexFed filed a motion for leave to serve expedited postjudgment discovery requests on CBS Holdings. HexFed stated that it understood that CBS Holdings was going to dispute the

6

reasonableness of the costs and attorney fees HexFed was requesting and, therefore, sought discovery on the amount of costs and attorney fees CBS Holdings itself had incurred in this matter.

CBS Holdings filed a response opposing HexFed's motion in which it argued that it did not have to respond to HexFed's postjudgment discovery requests and reprised its argument that HexFed had not properly supported its application for costs and attorney fees. CBS Holdings also emphasized that HexFed's application did not include invoices, invoice summaries, or any other documentation that showed the time spent by HexFed's attorneys on this matter or a description of how such time was spent. The trial court denied HexFed's motion for leave to serve expedited postjudgment discovery requests on March 1, 2024.

On March 8, 2024, CBS Holdings filed an unopposed motion to continue the hearing on HexFed's application for costs and attorney fees from March 21 to March 25, because counsel for CBS Holdings was scheduled to participate in a jury trial beginning on March 18. The trial court granted CBS Holdings' motion.

On the morning of March 25, 2024, CBS Holdings filed its response in opposition to HexFed's application for costs and attorney fees. In its

7

response, CBS Holdings reprised its argument that HexFed had not properly supported its application for costs and attorney fees. CBS Holdings argued that "exactly what [HexFed] is seeking to recoup cannot be determined from the Application." As an example, CBS Holdings argued that the application shows that HexFed is seeking to recover $11,866.30 paid to Moore Compliance Law, P.C., even though no one from that law firm was ever counsel of record for HexFed in this matter.

CBS Holdings also disputed the $5,160.50 paid to "Page One, LLC," for "e-discovery licenses," arguing there was nothing in the application "from which to ascertain the purpose or scope of these 'e-discovery licenses' or how [they] related to this case." Lastly, CBS Holdings emphasized that HexFed had not attached invoices, invoice summaries, or other documents that showed the time incurred by attorneys working on this case or a description of how that time was spent.

III. The Hearing on HexFed's Application for Costs and Attorney Fees

Later that day, the trial court held a hearing on HexFed's application for costs and attorney fees. HexFed brought three exhibits and two witnesses to the hearing. At the beginning of the hearing, the attorney for CBS Holdings noted that he had not seen the redacted

8

invoices that HexFed had brought to the hearing, because the redacted invoices had not been included with HexFed's original application. As a result, CBS Holdings asked for a continuance so that it could review the invoices. The trial court ultimately declined to continue the hearing but stated that CBS Holdings could move at the end of the hearing for extra time to respond in writing.

HexFed's first exhibit was a report prepared by HexFed's accounting department that summarized the litigation costs incurred by HexFed in relation to this matter. The accounting department's report listed each invoice received by HexFed, who the invoice came from, the date of the invoice, the amount due, and the "charge type" (either postage, filing fees, "e-discovery licenses," costs related to depositions, or "Legal Services").

HexFed's last two exhibits were redacted invoices from Loftin Holt LLP and Moore Compliance Law, P.C. Those invoices showed that HexFed was seeking attorney fees for the time consumed on this matter. Each charge for legal services was calculated by multiplying the amount of time billed by the rate charged for that time. However, the descriptions provided by the law firms explaining each charge were heavily redacted,

9

purportedly due to attorney-client privilege.

Of the 411 charges from Loftin Holt LLP, the explanatory notes for 403 charges were fully redacted. The 8 unredacted notes described charges for filing fees, deposition expenses, print services, and an expert-witness fee.

Additionally, of the 47 charges from Moore Compliance Law, P.C., the explanatory notes for 46 charges were fully redacted. The only unredacted note was for a FedEx charge. In other words, the time records included virtually no explanations for any of the time entries. Below is a representative example of what the invoices showed:



# INVOICE - PO 0014997

Invoice # 327
Date: 05/03/2021
Due Upon Receipt

# Loftin Holt LLP

200 Clinton Ave. W, Suite 405
Huntsville, AL 35801

Hexagon US Federal, Inc.
301 Cochran Road
Huntsville, AL 35824

## 00204-Hexagon US Federal, Inc.

## CBS Holdings Lease Dispute



| Type | Date | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|
| Service | 04/05/2021 | Attorney-Client Privilege | 1.25 | $500.00 | $625.00 |
| Service | 04/14/2021 | Attorney-Client Privilege | 0.50 | $500.00 | $250.00 |
| Service | 04/15/2021 | Attorney-Client Privilege | 1.75 | $500.00 | $875.00 |
| Service | 04/16/2021 | Attorney-Client Privilege | 0.20 | $250.00 | $50.00 |
| Service | 04/16/2021 | Attorney-Client Privilege | 0.25 | $350.00 | $87.50 |
| Service | 04/16/2021 | Attorney-Client Privilege | 1.00 | $500.00 | $500.00 |
| Service | 04/19/2021 | Attorney-Client Privilege | 1.25 | $500.00 | $625.00 |
| Service | 04/20/2021 | Attorney-Client Privilege | 0.20 | $300.00 | $60.00 |
| Service | 04/20/2021 | Attorney-Client Privilege | 1.00 | $500.00 | $500.00 |
| Expense | 04/21/2021 | Filing Fee: Complaint filing fee | 1.00 | $547.04 | $547.04 |
| Service | 04/21/2021 | Attorney-Client Privilege | 1.25 | $500.00 | $625.00 |

Page 1 of 2

11

In addition to its exhibits, HexFed also called two witnesses to testify on its behalf. Glenda Smart, the corporate counsel for HexFed, testified first. Smart testified that HexFed's in-house counsel retired during the COVID-19 pandemic, so HexFed turned to Matthew Moore of Moore Compliance Law, P.C., for its legal needs, because Smart did not join HexFed until August 2022. Moore did the initial work with respect to the lease dispute, but, once it was clear that the dispute would require litigation, HexFed hired Loftin Holt LLP. Smart testified that attorneys with Loftin Holt LLP were the "representative attorneys for this litigation" and were initially hired to file the complaint, though they also handled depositions, written discovery, other demands, and were HexFed's representatives at trial. Smart also testified that the fees for e-discovery licenses from Page One, LLC, were for the purpose of this litigation.

On cross-examination, Smart testified that Moore had also performed work for HexFed not related to the commercial-lease dispute. At the time of the hearing, Moore was the corporate secretary for HexFed, a position he assumed before Smart's date of employment. In addition, Moore handled "intercompany agreement work with the parent

company" and "other legal things." Smart testified that HexFed would receive multiple bills from Moore Compliance Law, P.C., specific to each of Moore's roles. Smart would then review the explanatory note for each charge to make sure the charge corresponded with the correct bill.

Next, Walter A. "Tod" Dodgen, the managing partner of the Huntsville office of Maynard Nexsen, P.C., testified as an expert witness for HexFed on attorney fees. Dodgen testified that he was familiar with the litigation, was familiar with the attorneys at Loftin Holt LLP, and had reviewed the redacted invoices from Loftin Holt LLP and Moore Compliance Law, P.C., and found the rates charged by those law firms to be reasonable. Dodgen also testified that it was efficient to use e-discovery in this case and that the e-discovery costs in this case were very low. Finally, Dodgen concluded that the amount of time and the actual cost billed to HexFed was "very reasonable given the scope of the case and the work that was done" and noted that he had considered the factors set forth in this Court's decision in Peebles v. Miley, 439 So. 2d 137 (Ala. 1983) ("the Peebles factors"), in reaching this conclusion. Dodgen further testified that he was surprised the fees were as low as they were given the nature of the work, the number of expert witnesses, the fact that five

13

depositions had been taken, and the fact that the trial had lasted two days.

On cross-examination, however, Dodgen testified that he had reviewed only the redacted version of the invoices from HexFed and explained that, as a litigator, he would not give an expert witness unredacted versions of his own bills, because it would violate attorney-client privilege. Dodgen also recalled that, in at least one case he had been involved with, the invoices produced from opposing counsel seeking to recover attorney fees contained explanatory notes redacted in their entirety.

CBS Holdings called no witnesses of its own and instead requested that the hearing be continued for a few weeks so that it could review the redacted invoices and provide either an additional written response or request a conclusion session of the hearing. The trial court granted CBS Holdings' motion and gave it 14 days to file a response.

On April 8, 2024, CBS Holdings filed its supplemental response in which it argued that the trial court should not consider the redacted invoices that HexFed had brought to the hearing, because, it asserted, they had been filed too late. Additionally, CBS Holdings argued that the

14

redacted invoices did not sufficiently support HexFed's application for attorney fees, because, it said, the heavily redacted invoices made it impossible to determine whether the amounts charged were reasonable and necessary.

IV. The Trial Court's Order

On April 16, 2024, the trial court entered an order awarding HexFed $174,987.45 in costs and attorney fees. In its entirety, the trial court's order provided:

> "This matter came before the Court on Plaintiff Hexagon US Federal Inc.'s ('HexFed') Application for Fees and Expenses. … The Court FINDS that the attorneys' fees and expenses incurred by HexFed to enforce its rights under the lease agreement with Defendant CBS Holdings, LLC were reasonable under the factors set forth in Peebles v. Miley, 439 So. 2d 137 (Ala. 1983); and ENTERS final judgment against Defendant CBS Holdings, in favor of Plaintiff HexFed, in the amount of $174,987.45. Any further relief requested by either party is DENIED. This matter is closed."

(Capitalization in original.)

V. CBS Holdings' Present Appeal

CBS Holdings appealed the trial court's order awarding costs and attorney fees to this Court on May 15, 2024. On July 24, 2024, this Court stayed the current appeal, pending the resolution of CBS Holdings' first appeal. See CBS Holdings, ____ So. 3d at ____ n.4. As stated previously,

15

in that appeal, our Court affirmed the trial court's judgment in favor of HexFed on all of CBS Holdings' claims as well as the trial court's determination that HexFed was entitled to costs and attorney fees. After this Court issued our decision in that appeal, we lifted the stay in the present appeal and are now being asked to determine whether the amount of the costs and attorney fees awarded to HexFed should be upheld.

## Standard of Review

"'The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and its determination on such an issue will not be disturbed on appeal unless in awarding the fee the trial court exceeded that discretion. State Bd. of Educ. v. Waldrop, 840 So. 2d 893, 896 (Ala. 2002); City of Birmingham v. Horn, 810 So. 2d 667, 681-82 (Ala. 2001); Ex parte Edwards, 601 So. 2d 82, 85 (Ala. 1992), citing Varner v. Century Fin. Co., 738 F.2d 1143 (11th Cir. 1984).

"'....

"'We defer to the trial court in an attorney-fee case because we recognize that the trial court, which has presided over the entire litigation, has a superior understanding of the factual questions that must be resolved in an attorney-fee determination. Horn, 810 So. 2d at 681-82, citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). Nevertheless, a trial court's order regarding an attorney fee must allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee. Horn, 810

16

So. 2d at 682, citing <u>American Civil Liberties Union of Georgia v. Barnes</u>, 168 F.3d 423, 427 (11th Cir. 1999); <u>see also</u> <u>Hensley</u>, 461 U.S. at 437, 103 S. Ct. 1933.'"

<u>Kiker v. Probate Ct. of Mobile Cnty.</u>, 67 So. 3d 865, 867-68 (Ala. 2010) (quoting <u>Pharmacia</u>, 915 So. 2d at 552-53).

<u>Discussion</u>

On appeal to this Court, CBS Holdings makes two arguments: (1) that HexFed failed to properly support its application for costs and attorney fees and (2) that the trial court failed to explain with sufficient particularity why it awarded HexFed $174,987.45 in costs and attorney fees. In support of its arguments, CBS Holdings emphasizes that HexFed's heavily redacted invoices did not allow the trial court to review whether HexFed was entitled to recover all the invoiced charges it alleged it had incurred during the course of the underlying commercial-lease dispute.

In Alabama, it is well settled that the criteria to be considered by a trial court in determining a reasonable attorney fee are the 12 factors set forth in <u>Peebles</u>. The <u>Peebles</u> factors have been summarized as follows:

"(1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of

his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances."

Van Schaack v. AmSouth Bank, N.A., 530 So. 2d 740, 749 (Ala. 1988). Although there may be multiple ways for a trial court to calculate a reasonable attorney-fee award, the trial court must always consider the Peebles factors in reaching its final award. See, e.g., Beal Bank, SSB v. Schilleci, 896 So. 2d 395, 397-98, 403 (Ala. 2004) (holding that Peebles factors apply when attorney fees sought for time consumed on the case); Pharmacia, supra (applying the Peebles factors to a flat-fee award); and Madison Cnty. Dep't of Hum. Res. v. T.S., 53 So. 3d 38, 44-45 (Ala. 2009) (applying the Peebles factors to a contingency-fee award). It should also consider the Peebles factors even if some, but not all, of the factors are implicated in a particular case. See Beal Bank, 896 So. 2d at 403 ("We stress that these criteria are evaluative and not an exhaustive list of specific criteria that all must be met when reviewing the reasonableness of an attorney fee.").

In addressing CBS Holdings' arguments in the present case, we find

18

our prior decision in <u>Pharmacia</u>, <u>supra</u>, to be especially helpful because it is routinely applied by our Court in cases similar to the one now before us.[1] In that case, Candis McGowan served as the guardian ad litem for a group of minor plaintiffs and as the administrator ad litem for a group of deceased plaintiffs in a toxic-tort action against Pharmacia Corporation, formerly known as Monsanto Company. After a settlement agreement had been reached, McGowan was appointed to review and execute the agreement on behalf of the minors and the deceased plaintiffs' estates.

McGowan later petitioned the trial court for an attorney-fee award in the amount of $284,000, arguing that a reasonable fee would be $500 per plaintiff. Pharmacia objected, noting that McGowan had not provided records of the time she spent on the case and suggested that she be paid instead based on her actual hours worked on the case at a rate of $250 per hour. The trial court awarded McGowan $284,000 in attorney fees, and Pharmacia appealed.

---

[1]<u>See</u>, <u>e.g.</u>, <u>Eli Global, LLC v. Cieutat</u>, 400 So. 3d 534, 560-61 (Ala. 2023) (relying on <u>Pharmacia</u> to remand case back to trial court so that it could provide sufficient explanation as to how it determined the attorney fees it had awarded); and <u>Ex parte Shinaberry</u>, 326 So. 3d 1037 (Ala. 2020) (relying on <u>Pharmacia</u> to find that the trial court had exceeded its discretion in awarding attorney fee of $7,750 to guardian ad litem).

On original submission, the Pharmacia Court explained that "a trial court's order regarding an attorney fee must allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee." 915 So. 2d at 553. Because the trial court's order had provided "no indication as to whether the trial court considered any of the [Peebles factors as] outlined by this Court in Van Schaack," the Pharmacia Court remanded the case with instructions for the trial court to enter an order explaining its decision. See id. at 553, 554.

On remand, the trial court entered a "memorandum opinion and order" in which it explained that it had arrived at an attorney-fee award of $284,000 by multiplying McGowan's recommended $500 flat fee by the 568 wards McGowan represented. Id. at 554 (opinion on return to remand). In support of its conclusion, the trial court noted that, although attorneys may be paid on an hourly basis, other fee structures like contingency fees and flat fees are common within the Bar. Id. at 555. Citing Peebles, the trial court reasoned that "'[a]lthough time spent in a case has often been the first yardstick used by the trial judge in setting a fee, it is not the only measure of a fee, and indeed need not even be

considered by the judge at all.'" Id.

On return to remand, the Pharmacia Court disagreed, stating:

"We do not agree with the trial court's assessment that Peebles v. Miley, 439 So. 2d 137 (Ala. 1983), stands for the proposition that a trial court, in determining an attorney-fee award, need not consider 'at all' the time spent on the matter. To the contrary, Peebles states that 'all of the [12 criteria] must be taken into consideration by the trier of the facts.'"

Id. (quoting Peebles, 439 So. 2d at 141) (emphasis added). In reversing the trial court's award of $284,000 in attorney fees to McGowan, the Pharmacia Court concluded that an attorney-fee award should not -- and could not -- be assessed without considering all the Peebles factors, including the factor concerning the time spent on a matter.

Stated simply, Pharmacia stands for the proposition that a trial court's order awarding attorney fees should show that it considered all 12 Peebles factors, even if it summarily concludes that not all the factors are implicated.[2] The trial court's order must also be sufficiently detailed

_____

[2]We note that, even if a trial court does not show that it considered all the Peebles factors, we may still affirm the trial court's award of attorney fees if the omission was harmless. See Moultrie v. Wall, 143 So. 3d 128, 137 (Ala. 2013). However, a party who seeks to challenge a trial court's award of attorney fees because the court did not consider all the Peebles factors must show how the party was prejudiced by the trial court's omission.

to allow for "meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee." Pharmacia, 915 So. 2d at 553.

In order for a trial court to satisfy its obligation under Pharmacia and Peebles, a party requesting attorney fees must first provide sufficient evidence to support its request. Generally, this means that a comprehensive application for attorney fees should include an analysis of all 12 Peebles factors; however, we recognize that there may be cases in which not all of those factors may be implicated and, thus, need not be discussed in detail. See Beal Bank, 896 So. 2d at 403 ("'Indeed, there would hardly ever be a case where the application of attorney's fees brought into play every criterion.'" (quoting Graddick v. First Farmers & Merchants Nat'l Bank of Troy, 453 So. 2d 1305, 1311 (Ala. 1984))).[3]

_____

[3]We recognize that, in practice, some kinds of evidence may be less relevant depending on the petitioner's theory of how the attorney fees should be calculated. For example, if the petitioner does not allege that its attorneys were especially experienced, and the opposing party does not allege that the petitioner's attorneys were especially inexperienced, the trial court might assume that the fourth Peebles factor ("the professional experience and reputation of the attorney") may not result in either an upward or downward adjustment to the attorney fees. Compare Madison Cnty. Dep't of Hum. Res. v. T.S., 53 So. 3d 38, 56 (Ala. 2009) (determining that attorney's experience was not relevant to the

Because "it is generally recognized that the first yardstick that is used by the trial judges [in evaluating a request for attorney fees] is the time consumed," Peebles, 439 So. 2d at 141, a petitioner must include some accounting of the time consumed on the matter with an application for attorney fees.[4]

However, when the basis for the attorney fees is premised on the time consumed, the petitioner must do more. Applications based upon time consumed should sufficiently describe the billed time such that the trial court can independently calculate what would be an appropriate fee. Under this method, the petitioner must demonstrate that the time billed and the billing rate were reasonable and that the work was necessary,

---

calculation of fees), with City of Birmingham v. Horn, 810 So. 2d 667, 684 (Ala. 2001) (determining that petitioner's attorneys had little experience in the relevant area of law and therefore should have a lower hourly billing rate).

[4]We note briefly that the time-consumed method is analogous to the federal "lodestar" method, and cases applying these methods should be construed consistently. Compare Peebles, 439 So. 2d at 141-42 (noting that, generally, trial courts first consider the time consumed, then adjust based on the other Peebles factors, including "the fee customarily charged in the locality for similar legal services"), with Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (noting that the federal "lodestar" method involves multiplying the reasonable hours worked by a reasonable rate, then considering factors that adjust the fee upward or downward).

see, e.g., Beal Bank, 896 So. 2d at 408-09, so that the trial court can then use that information to make its own determination of what an appropriate attorney-fee award should be. See Pharmacia, 915 So. 2d at 553.

How detailed this description must be will depend on the particular facts of each case. Ultimately, the descriptions should be detailed enough so that the trial court can check for itself that the requested attorney fees include only charges for time consumed for which the petitioner is entitled to recover. See, e.g., Ex parte Edwards, 601 So. 2d 82, 86 (Ala. 1992) ("The court should deduct for redundant hours and should deduct for hours spent on 'discrete and unsuccessful claims.'" (quoting Norman v. Housing Auth. of the City of Montgomery, 836 F. 2d 1292, 1302 (11th Cir. 1988))); Southeast Env't Infrastructure, L.L.C. v. Rivers, 12 So. 3d 32, 52 (Ala. 2008) (holding that, under an indemnity agreement, the award of attorney fees did not extend to services rendered to establish the right to indemnification). This is especially important when a law firm is working on multiple matters for the same client and when multiple law firms are working on the same matter for the same client -- both of which are true here. Cf. CBS Holdings' brief at 7 (noting that

Moore Compliance Law, P.C., worked on multiple matters for HexFed).

In the present case, HexFed's application for costs and attorney fees indicated that it was seeking attorney fees for the time consumed on this matter. However, rather than provide documentation detailing the time billed by its lawyers and showing that the work being billed was necessary, see Beal Bank, 896 So. 2d at 408-09, HexFed instead provided copies of its invoices containing 458 charges, 449 of which were fully redacted. Of the remaining charges, the only information that was left unredacted related to costs associated with the underlying litigation and not work performed by HexFed's lawyers.

HexFed contends that it had to redact that information based on attorney-client privilege. In making this assertion, however, HexFed does not explain why those invoices had to be fully redacted and why they could not have included some general information about what services were billed by their lawyers. Our Court has found that "slightly redacted copies of a large number of invoices from [the] attorneys that documented charged fees and expenses" were sufficient to support an application for attorney fees for the time consumed on a matter. Eli Global, LLC v. Cieutat, 400 So. 3d 534, 544 (Ala. 2023) (emphasis added). We are not

aware of any case in which a petitioner sought to recover and was awarded attorney fees under a time-consumed theory after providing invoices that completely redacted the descriptions of how the billed time was actually used based on attorney-client privilege. HexFed certainly has not provided us with any examples. Thus, under the circumstances of this case, HexFed failed to provide sufficiently detailed information in support its application for attorney fees.

Because HexFed failed to sufficiently support its application for attorney fees, we fail to see how the trial court could have sufficiently articulated how it calculated the amount of attorney fees it awarded or fully explained how it considered the Peebles factors in its calculation of its award. As a result, its order cannot be subject to "meaningful appellate review." Pharmacia, 915 So. 2d at 553.[5]

---

[5]We note that similar standards exist in federal court. For instance, the Eleventh Circuit Court of Appeals has recognized that the party seeking attorney fees has the burden of proof and must provide enough evidence "to enable the District Court … to make findings of fact and conclusions of law that would allow this Court to conduct meaningful appellate review." Johnston v. Borders, 36 F.4th 1254, 1286-87 (11th Cir. 2022). This includes the responsibility to "'maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'" Id. at 1283 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). When "a significant number of entries are severely redacted …,

Conclusion

Accordingly, we reverse the trial court's order and remand this matter to the trial court for HexFed to adequately support its application for costs and attorney fees. The trial court is free to accept any information or evidence that it deems necessary to assist it with confirming that the requested attorney fees include only billed charges that HexFed is entitled to recover. The trial court should then enter an order awarding costs and attorney fees to HexFed based on any additional evidence and information that is presented to it. Per this Court's decision in Pharmacia, that order should show how the trial court calculated the amount awarded and explain how it considered the Peebles factors in its calculation.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Stewart, C.J., and Shaw, Mendheim, McCool, and Lewis, JJ., concur.

Sellers, J., concurs in the result, with opinion, which Wise and Bryan, JJ., join.

---

it may be an abuse of discretion to award fees based on the redacted entries." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1197 (11th Cir. 2002).

SELLERS, Justice (concurring in the result).

Generally, when the same trial judge who presided over a trial subsequently awards costs and attorney fees, we give great deference to that judge's determination. However, that deference is not so broad that the determination is accepted without relevant documentary evidence and an indication that the trial court considered the relevant factors to support such an award. Thus, I agree with the main opinion that the judgment of the Madison Circuit Court ("the trial court") awarding Hexagon US Federal, Inc. ("HexFed"), $174,987.45 in costs and attorney fees is not detailed enough to allow for meaningful appellate review. In support of its application for costs and attorney fees, HexFed submitted invoices containing heavily redacted information, based on alleged attorney-client privilege. HexFed, however, had the burden of providing enough information to enable the trial court to make sufficient findings of facts and conclusions of law regarding the reasonableness of its fee request. If HexFed claimed that the invoices contained privileged information, it should have submitted unredacted copies for an <u>in camera</u> review for the trial court to evaluate and confirm that the invoices truly contained relevant and privileged information not subject to disclosure.

28

Accordingly, while I respect the trial court's award of costs and attorney fees in this case, we have little to evaluate and nothing to review to substantiate how the court determined the reasonableness of those costs and fees. As a result, this Court now reverses the trial court's order and remands the case for the trial court to give HexFed a second chance to adequately support its application for costs and attorney fees, to enter an order showing how the court calculated those costs and fees, and to explain how it considered the factors set forth in Peebles v. Miley, 439 So. 2d 137 (Ala. 1983), in its calculation. Although I agree that the Peebles factors are to be considered in fashioning an award of costs and attorney fees, I deem it imprudent to require a trial court to specifically weigh, enumerate, and discuss all the factors it considered to determine the reasonableness of the costs and fees. Rather, I would defer to a trial court's acknowledgment of the Peebles factors, without requiring a formulistic approach to an order awarding costs and fees. Thus, as long as a trial court enters a judgment acknowledging the Peebles factors relevant to its analysis and provides sufficient information for meaningful review, that is adequate. For this reason, I concur in the result.

Wise and Bryan, JJ., concur.